Case 4:18-cv-02111 Document 71 Filed on 02/26/20 in TXSD Page 1 of 9

United States District Court
Southern District of Texas
**ENTERED**
February 26, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CENTURYLINK COMMUNICATIONS, LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-18-2111 |
| TORQUED UP DRILLING AND DESIGN, LLC, et al., | § § § § | |
| Defendants. | § | |

### MEMORANDUM AND RECOMMENDATION

Pending before the court[1] are Defendant Dakota Lunsford's ("Dakota") Motion for Summary Judgment (Doc. 48) and Defendant Rockport Contract, LLC's ("Rockport"), Motion for Summary Judgment (Doc. 49). The court has considered the motion, the response, the replies, all other relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that both motions for summary judgment be **DENIED**.

### I. Case Background

Plaintiff filed this lawsuit as a result of the accidental severing of its fiber-optic cable.

### A. Factual Background

This lawsuit arises out of an incident that occurred during a fiber-optic cable installation project undertaken by FiberLight,

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. See Doc. 62, Ord. Dated Dec. 5, 2019.

LLC, a nonparty.[2] Prior to the underlying incident, Rockport was contracted by FiberLight to place two one-fourth-inch conduits underground along U.S. Highway 90.[3] Rockport subcontracted the cable plowing for the project to Defendant Dakota Lunsford.[4] Dakota is an individual who does business under the trade name CHM Construction.[5] Dakota specializes in constructing and installing buried utilities.[6] In areas where there was a driveway, street crossing, road intersection, creek, or other blockage, Dakota's cable plow could not be used.[7] For these areas, directional boring was required.[8] Dakota alleges that he verbally subcontracted the necessary directional boring to Defendant Torqued Up Drilling and Design, LLC ("Torqued Up"), a company run by Dakota's cousin, Chris Lunsford ("Chris").[9]

On June 25, 2016, in an area that required a directional bore, Chris was directional drilling and accidentally severed fiber-optic

---

[2] See Doc. 48-1, Ex. A to Dakota's Mot. for Summ. J., Dakota Dep. Tr. pp. 34-35.

[3] See id. p. 35.

[4] See id.

[5] See Doc. 48-1, Ex. A to Dakota's Mot. for Summ. J., Dakota Dep. Tr. pp. 12-15.

[6] See id.

[7] See id. pp. 34-35.

[8] See id.

[9] See id.

cable belonging to Plaintiff (the "Incident").[10] Dakota and Rockport allege that Chris hit Plaintiff's cable while operating as Torqued Up. Dakota was not present when the Incident occurred.[11]

Four days after the Incident, Chris emailed Bill Hitt, Plaintiff's Manager of Network Operations, stating that "Torqued up drilling was doing the bore and hit the fiber you can proceed with me Chris Lunsford owner of Torqued up drilling thank you sir[.]"[12] Following the incident, Chris began abusing drugs and Dakota fell out of contact with him.[13] Chris formed Torqued Up on July 23, 2016, twenty-eight days after the Incident.[14]

Whether Chris was acting as an independent contractor is in dispute. Dakota and Rockport contend that Chris was an independent contractor and was free to complete the assignment as he pleased.[15] However, Plaintiff has provided some evidence that: (1) Chris could be fired at will by Dakota; (2) Dakota would have stopped Chris from digging at the location where the cable was severed had he arrived prior to the Incident; (3) Chris used Dakota's reel trailer

---

[10] See Doc. 48-1, Ex. A to Dakota's Mot. for Summ. J., Dakota Dep. Tr. p. 69.

[11] See id. pp. 45-46.

[12] See Doc. 48-5, Ex. C-2 to Dakota's Mot. for Summ. J., Chris Email.

[13] See Doc. 48-1, Ex. A to Dakota's Mot. for Summ. J., Dakota Dep. Tr. pp. 66-67.

[14] See Doc. 56-4, Ex. D to Pl.'s Resp. to Rockport's Mot. for Summ. J., Cert. of Formation.

[15] See id. p 82.

to complete the directional bore where the cable was severed; (4) Chris was using a mud-mixing truck that said "Rockport" on the side at the time of the Incident;[16] (5) most of the equipment used at the site of the Incident said "Rockport" on it; (6) Chris and Dakota were operating under a Rockport One-Call ticket;[17] (7) Plaintiff's employee charged with performing locate marks was under the impression that he was dealing with Rockport employees throughout the project; (8) Dakota was aware that his agreement with Rockport did not allow him to subcontract the directional boring to Chris; (9) Dakota did not have a written contract with Chris; and (10) Torqued Up did not exist at the time of the Incident.[18]

## B. Procedural Background

Plaintiff filed this lawsuit on June 22, 2018.[19] On August 30, 2019, Dakota filed his pending motion for summary judgment.[20] On September 3, 2019, Rockport filed its pending motion for summary

---

[16] Dakota stated that this was just advertising for Rockport and that Torqued Up actually owned the truck. See id. p. 52.

[17] Under Texas's One-Call Statute, a person who intends to excavate is required to notify a notification center at least forty-eight hours before the excavation is scheduled. See Tex. Util. Code Ann. § 251.001 et seq. The notification center is then required to alert any owners of affected underground facilities of the scheduled excavation. Id. Each affected facility owner is required to mark the underground facility if the owner believes marking the underground facility is necessary. Id.

[18] See id. pp. 59, 70-72, 80-83, 104 ; Doc. 54-3, Ex. C to Pl.'s Resp. to Dakota's Mot. for Summ. J., Burgess Dep. Tr. p. 22, 26, 34, 46-47, 58, 102, 119-120; Doc. 56-4, Ex. D to Pl.'s Resp. to Rockport's Mot. for Summ. J., Cert. of Formation.

[19] See Doc. 1, Pl.'s Orig. Compl.

[20] See Doc. 48, Dakota's Mot. for Summ. J.

judgment.[21]  On September 20, 2019, Plaintiff filed a response to Dakota's motion for summary judgment.[22]  On September 24, 2019, Plaintiff filed a response to Rockport's motion for summary judgment.[23] On September 26, 2019, Dakota filed a reply in support of his motion for summary judgment.[24]  On October 1, 2019, Rockport filed a reply in support of its motion for summary judgment.[25]

## II.  Legal Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A., 759 F.3d 498, 504 (5th Cir. 2014).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  Coastal Agricultural

---

[21]   See Doc. 49, Rockport's Mot. for Summ. J.

[22]   See Doc. 53, Pl.'s Resp. to Dakota's Mot. for Summ. J.

[23]   See Doc. 55, Plaintiff's Resp. to Rockport's Mot. for Summ. J.

[24]   See Doc. 58, Dakota's Reply in Support of Mot. for Summ. J.

[25]   See Doc. 59, Rockport's Reply in Support of Mot. for Summ. J.

Supply, Inc., 759 F.3d at 504 (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues. See id. at 505 (quoting Celotex Corp., 477 U.S. at 323). If the movant carries its burden, the nonmovant may not rest on the allegations or denials in the pleading but must respond with evidence showing a genuine factual dispute. See id. The court must accept all of the nonmovant's evidence as true and draw all justifiable inferences in her favor. Coastal Agric. Supply, Inc., 759 F.3d at 505 (quoting Anderson, 477 U.S. at 255).

### III. Analysis

Plaintiff alleges claims of trespass, negligence, and gross negligence against Defendants.[26] Rockport and Dakota argue that Torqued Up was an independent contractor which should bear sole responsibility for the Incident and they should be dismissed from this lawsuit. Plaintiff argues that factual disputes preclude summary judgment.[27]

It is undisputed that Chris is the person who severed

---

[26] See Doc. 1, Pl.'s Orig. Compl.

[27] Without citation to a relevant case, Dakota makes a short argument in his reply brief that Plaintiff cannot argue that respondeat superior or vicarious liability apply because Plaintiff did not specifically plead either in its complaint. This argument is without merit.

Plaintiff's fiber-optic cable. Thus, the relevant question is whether Rockport or Dakota can be held liable for Chris's actions.

"Generally, an employer has no duty to ensure that an independent contractor performs its work in a safe manner." Fifth Club, Inc. v. Ramirez, 196 S.W.3d 788, 791 (Tex. 2006)(citing Lee Lewis Const., Inc. v. Harrison, 70 S.W.3d 778, 783 (Tex. 2001)). Nonetheless, "an employer can be held vicariously liable for the actions of an independent contractor if the employer retains some control over the manner in which the contractor performs the work that causes the damage." Id. (citing Harrison, 70 S.W.3d at 783). In deciding whether an individual is an independent contractor or an employee, the Texas Supreme Court asks "whether the employer has the right to control the progress, details, and methods of operations of the work." Id. The factors to consider in assessing control are:

> (1) the independent nature of the worker's business; (2) the worker's obligation to furnish necessary tools, supplies, and materials to perform the job; (3) the worker's right to control the progress of the work except about final results; (4) the time for which the worker is employed; and (5) the method of payment, whether by unit of time or by the job.

Id. "Given the fact-intensive nature of the employee/independent contractor inquiry, there is a presumption in favor of submitting worker-status inquiries to the jury." Energy XXI, GoM, LLC v. New Tech Eng'g, L.P., 845 F. Supp. 2d 770, 775 (S.D. Tex. 2012) (citing Hathcock v. Acme Truck Lines, Inc., 262 F.3d 522, 527 (5th Cir.

2001)).

Here, it is undisputed that Torqued Up did not exist at the time of the Incident, and the contract that is alleged to have created an independent contractor relationship between Torqued Up and Dakota was verbal. These facts alone cast doubt on Torqued Up's status as an independent contractor.

Consideration of other evidence further muddies the employment relationships between the parties. For example, it is undisputed that the One-Call ticket was in Rockport's name and there is evidence that some or all of the equipment being used had Rockport's name on it. Additionally, Plaintiff's employee testified that he believed that he was dealing with Rockport employees. The evidence as a whole does not conclusively establish as a matter of undisputed fact that any party was an independent contractor.

Finally, Chris's email claiming responsibility for the Incident does not require the court to find that Torqued Up is liable for the Incident alone. This is especially true given the timing of Torqued Up's formation and the fact that Chris disappeared shortly after the Incident.

In order to determine which party should be held responsible for the Incident, a jury must sort out the factual disputes surrounding the employment relationships between Rockport, Dakota, and Torqued Up/Chris. As the court finds that the motions should

...

be denied on the basis discussed above, the court will not address the other grounds raised in Plaintiff's responses to the motions for summary judgment.

### IV. Conclusion

Based on the foregoing, the court **RECOMMENDS** that Rockport's Motion for Summary Judgment be **DENIED** and that Dakota's Motion for Summary Judgment be **DENIED.**

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 26th day of February, 2020.

_____
Nancy K. Johnson
United States Magistrate Judge